# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **PAYSOURCE, INC., et al.** | : | Case No. 3:07 CV 0129 |
| Plaintiffs, | : | (Judge Walter Herbert Rice) |
| v. | : | |
| **MIRABILIS VENTURES, INC., et al.** | : | |
| Defendants. | : | |

### DEFENDANTS MIRABILIS VENTURES, INC.; MIRABILIS HR; SPH, INC.; AARON BATES; YANIV AMAR; COMMON PAYMASTER CORP.; AEM, INC.; MARTY FLYNN; JAMES SADRIANNA; AND JAY STOLLENWERK'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

Now come the above-named Defendants, by and through counsel, and move to dismiss the Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b). These Defendants also move pursuant to 28 U.S.C. § 1404(a) for a transfer of this case to the District Court for the Middle District of Florida.

Respectfully submitted,

/s/ *Joseph C. Oehlers*
David C. Greer, Trial Attorney (0009090)
E-mail: dcg@bgllaw.com
Joseph C. Oehlers (#0065740)
E-mail: jco@bgllaw.com
Steven K. Dankof, Jr. (0080628)
E-mail: skd@bgllaw.com
BIESER, GREER & LANDIS LLP
400 National City Center
6 N. Main Street
Dayton, OH  45402
(937) 223-3277
(937) 223-6339 (fax)
Attorneys For Defendants, Mirabilis Ventures, Inc.,
Mirabilis HR, SPH, Inc., Common Paymaster Corp.,
AEM, Inc., Aaron Bates, Yaniv Amar, Marty Flynn,
James Sadrianna and Jay Stollenwerk

**MEMORANDUM**

**I.     Introduction**

On April 4, 2007, Plaintiffs Paysource, Inc. ("Paysource") and Robert Sacco ("Sacco;" collectively referred to hereinafter as "Plaintiffs") filed a Complaint against thirteen named Defendants and an unknown number of John Doe Defendants.  This Motion is made on behalf of ten of the named Defendants as follows: Mirabilis Ventures, Inc. ("Mirabilis Ventures"); Mirabilis HR; SPH, Inc. ("SPH"); Aaron Bates ("Bates"); Yaniv Amar ("Amar"); Common Paymaster Corp. ("CPC")[1]; AEM, Inc. ("AEM"); Marty Flynn ("Flynn"); James Sadrianna ("Sadrianna"); and Jay Stollenwerk ("Stollenwerk"). These ten Defendants will be referred to collectively as "Moving Defendants."

According to the Plaintiffs' Complaint, Paysource is an Ohio corporation with its principal place of business in Dayton and its owner, Sacco, a resident of Huber Heights.  (Compl. at ¶¶ 1-2). The Complaint alleges that Mirabilis Ventures, Mirabilis HR, SPH, AEM, and CPC are Nevada corporations with their principal places of business in Orlando, Florida.  (Id. at ¶¶3–5, 11-12).  The Complaint further alleges that Bates, Amar, Flynn, Sadrianna, and Stollenwerk are all Florida residents.  (Id. at ¶¶7, 9, 13-15).

The Plaintiffs have asserted seven claims which are nothing more than conclusory allegations that refer to "Defendants" and purport to be based upon factual allegations in the Complaint, most of which suffer from the same lack of specificity despite the large  number of Defendants the Plaintiffs chose to include in their lawsuit. The claims asserted are as follows:

- Breach of the Purchase Agreement (between Sacco and SPH) and the License Agreement (between Paysource and AEM)

---

[1]The Plaintiffs misidentified CPC in their Complaint as "Common Pay Masters, Inc."

2

- Rescission of "Various Agreements" (presumably the Purchase Agreement, License Agreement, Security Agreement and stock purchase agreements between Paysource and Mirabilis Ventures to which Paragraph 52 refers)
- Declaratory Judgment Regarding Ownership of Common Stock of Paysource
- Fraud
- Conversion
- Civil Conspiracy
- Negligent Misrepresentation

The Plaintiffs claims speak generically of "Defendants" despite the fact that with many of the Moving Defendants, little more than an introduction is done in the Complaint before the Plaintiffs move on to asserting claims against them for fraud they do not appear to be connected to and breaches of contracts to which they were never parties. (See, e.g., Complaint ¶¶7, 19, 24 as to Bates; ¶¶9, 19 as to Amar; and ¶¶13, 19 as to Flynn). There is nothing of substance alleged anywhere that indicates that the individual Moving Defendants were acting in their individual capacities. With many of the entities, it appears clear that they are involved because of a relationship to the entities that entered into the contracts that form the bases of the Plaintiffs' Complaint-- AEM, SPH and Mirabilis Ventures.

  The Moving Defendants submit that the Plaintiffs' claims should be dismissed as follows:

I.   The individual Moving Defendants as well as the corporate Moving Defendants who signed no contracts submitting themselves to this Court's jurisdiction should all be dismissed because this Court lacks jurisdiction over them given that they have no contacts of note with the State of Ohio.

II.   The individual Moving Defendants as well as the corporate Moving Defendants who signed no contracts at issue should be dismissed because the Complaint contains no allegations that in total state any claims against them upon which relief may be granted.

III.   The Plaintiffs' fraud-based claims should be dismissed in their entirety due to the failure to plead any underlying facts with the required particularity.

IV.   To the extent there are claims remaining against the Moving Defendants, this Court should transfer this action to the appropriate Federal District Court in Florida given that a Florida forum would be the most convenient and appropriate forum.

**II.     Law And Analysis**

    A.    This Court Lacks Jurisdiction Over The Moving Defendants Who Did Not Execute Contracts That Included Forum Selection/Jurisdiction Provisions.

This Court lacks jurisdiction over most of the Moving Defendants who should, accordingly, be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). In order to determine whether jurisdiction exists over a nonresident defendant, a District Court must apply the law of the state in which it sits, subject to the constitutional limits of due process. Cole v. Mileti, 133 F.3d 433 (6th Cir. 1998). Ohio's long-arm statute, Ohio Rev. Code § 2307.382, provides that an Ohio court may exercise jurisdiction over a "person" (defined in Section 2307.381 to include corporations) who acts directly or by an agent, as to a cause of action arising from that person:

    (1)    Transacting any business in this state;

    (2)    Contracting to supply services or goods in this state;

    (3)    Causing tortious injury by an act or omission in this state;

    (4)    Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

    (5)    Causing injury in the state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

    (6)    Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A).

Additionally, the exercise of jurisdiction over a defendant must satisfy constitutional due process requirements. Under the Due Process Clause, the central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." Cole, 133 F.3d at 436. The Sixth Circuit has adopted the following three-part test to assess the propriety of exercising jurisdiction over a nonresident:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

The "purposeful availment" requirement of due process is only satisfied when a defendant's contacts with the forum state, "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he, "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1992), cert. denied, 513 U.S. 962 (1994)). This requirement insures that a defendant is not forced to defend a lawsuit in a jurisdiction based only on "random," "fortuitous," or "attenuated" contacts. See Burger King, 471 U.S. at 475.

The Plaintiffs' Complaint alleges little or no facts upon which one could conclude that the exercise of jurisdiction over all of the Moving Defendants would be appropriate. To the extent the Plaintiffs would have it assumed that they are relying upon certain forum selection/jurisdictional

5

clauses contained in the contracts to which their Complaint refers, those provisions hardly give this Court jurisdiction over all the Defendants the Plaintiffs have chosen to name in their lawsuit.

In fact, though the Plaintiffs make allegations that "the Defendants" engaged in wrongdoing of one sort or another, rarely are the allegations Defendant-specific and never does the Complaint allege in any material manner the circumstances in which the alleged conduct was to have occurred, specifically the connection any such conduct would have had to the state of Ohio. Setting aside for the time being the Moving Defendants AEM, SPH and Mirabilis Ventures, who were signatories on the contracts which contained forum selection/jurisdiction clauses, the other Moving Defendants signed no such contracts and otherwise had no Ohio contacts of note. As set forth in the Affidavits attached hereto as **Exhibits A-E**, the individual Moving Defendants had no contact with the State of Ohio in their individual capacities that would meet the requirements of Ohio's long arm statute and due process.

The Complaint's deficiencies regarding the issue of jurisdiction over the many Moving Defendants are clear. The Complaint does not allege any of the individual Moving Defendants having any of their own significant Ohio contacts, but rather only tenuous contacts (e.g. telephone calls) related to their work as agent for certain of the corporate Defendants. This agent capacity is implied throughout (see, e.g., Paragraph 27 which speaks of "the Defendants" engaging in negotiations which culminated in the Purchase Agreement between SPH and Sacco) and specifically stated in some places (see, e.g., Paragraph 20 which states that, "the Individual Defendants acted on behalf of each of the Corporate Defendants..."). The Complaint does not truly attempt to allege that any of these individual Moving Defendants were acting for themselves, an issue which implicates the "fiduciary shield doctrine."  At most, the Complaint alleges that Moving Defendants Bates, Amar, Flynn, Sadrianna, and Stollenwerk acted as agents of the various corporate entities named as

Defendants with no further allegations of their individual contacts. "With regard to personal jurisdiction over corporate officers, Ohio courts employ the 'fiduciary shield doctrine,' whereby an individual's status as an officer of a company does not subject him or her to personal jurisdiction suit in Ohio's courts for acts performed solely in their official capacities." <u>Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.</u>, 2007 U.S. Dist. LEXIS 40395, *26 (N.D.Ohio June 4, 2007), attached as **Exhibit F** (citing, among other authorities, <u>Weller v. Cromwell Oil Co.</u>, 504 F.2d 927, 930 (6th Cir. 1974)).  To meet their burden of alleging facts that demonstrate the existence of personal jurisdiction over the individual Moving Defendants, the Plaintiffs in this case would need to allege facts that establish that those persons purposely availed themselves *in their individual capacity* of the privilege of acting in Ohio. <u>see</u>, e.g., <u>Cincinnati Sub-Zero Products, Inc. v. Augustine Med., Inc.</u>, 800 F. Supp. 1555 (S.D.Ohio 1992) (citing <u>Weller</u>, 504 F.2d at 929).  The Plaintiffs have not and cannot legitimately allege such purposeful availment by the individual Moving Defendants, much less prove it. As set forth in the attached affidavits, to the extent any of the individual Moving Defendants were involved at all with the transactions at issue in this case, they were involved in Florida, none of them having traveled to Ohio in conjunction with those transactions. **Exhibits A-E**.

Most of the Moving Defendants have been named in this action due solely to their relationship to the three Moving Defendants that entered into the agreements that form the core of the Plaintiffs' Complaint-AEM, SPH and Mirabilis Ventures. Though forum and jurisdiction may properly be based upon a contractual provision, there are statutory and constitutional limits that would be exceeded if this Court were to exercise jurisdiction over the other seven Moving Defendants who never agreed to resolve their disputes in Ohio. Accordingly, the Moving Defendants Mirabilis HR, CPC, Bates, Amar, Flynn, Sadrianna, and Stollenwerk should be dismissed from this action due to this Court's lack of jurisdiction over them.

> B.     <u>As Against All But Three Of The Moving Defendants, The Plaintiffs' Complaint Fails To State A Claim Upon Which Relief May Be Granted.</u>

The Plaintiffs' Complaint as it pertains to most of the Moving Defendants is a series of disconnects, at best, which should be dismissed for failing to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) challenge to a complaint, the Court must accept the allegations stated in the complaint as true. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). The Complaint also should be considered in a light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Westlake v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976). The Court must determine whether the plaintiff can prove no set of facts in support of their claims that would entitle them to relief; if the Court finds that the complaint does not state sufficient facts to support the necessary elements of the plaintiff's claims, then a Rule 12(b)(6) motion is properly granted. See <u>Ziegler v. IBP Hog Mkt., Inc.</u>, 249 F.3d 509, 511-12 (6th Cir. 2001).

In this case, the Plaintiffs included all of the Moving Defendants in each of the seven claims for relief in their Complaint despite the fact that as against all but SPH, AEM. and Mirabilis Ventures there are essentially no allegations of wrongdoing. The most glaring deficiency concerns the references to Moving Defendants Bates, Amar, and Flynn. With the exception of some unspecified involvement in some meetings and conversations, the Complaint does not include any allegations of conduct, much less misconduct, on the part of these individuals. (<u>See</u> Compl. at ¶¶7, 19, 24 as to Bates; ¶¶9, 19 as to Amar; and ¶¶13, 19 as to Flynn). Even taking the allegations in the Plaintiffs' Complaint as true and construing them in a light most favorable to the Plaintiffs, the Plaintiffs have not alleged – nor can they prove – any set of facts that would allow them to impose liability upon Bates, Amar, and Flynn in their individual capacities under any of the Plaintiffs' claims

8

for relief. Based solely upon this broad, complaint-wide analysis, these three Moving Defendants should be dismissed from this lawsuit.

When considering each claim individually, they do not stand vis-a-vis most of the Moving Defendants either. The Plaintiffs' first claim for breach of contract should be dismissed as to all of the Defendants except SPH, AEM, and Mirabilis Ventures. The breach of contract claim is based only on the Purchase Agreement and the alleged License Agreement. (Compl. at ¶¶58-59). The Complaint alleges that the parties to the Purchase Agreement were the Plaintiffs and SPH. (Id. at ¶¶27, 37). The Complaint alleges that the parties to the alleged License Agreement were the Plaintiffs and AEM. (Id. at ¶¶22, 45). To the extent any other Moving Defendants were meant by the Plaintiffs to be targets of the breach of contract claim, that claim should be dismissed against them.

The Plaintiffs' second claim for relief seeking rescission of "various agreements" can only include those Defendants alleged to have entered into an agreement with the Plaintiffs. (Id. at ¶63). Nowhere in the Complaint do the Plaintiffs allege that any of the Moving Defendants sued in their individual capacities – Bates, Amar, Flynn, Sadrianna, and Stollenwerk – or any entity Defendants other than AEM, SPH and Mirabilis Ventures entered into any agreement or personally guaranteed any agreement with the Plaintiffs. The Plaintiffs have not alleged any facts that would allow them to recover against these Moving Defendants on a claim for rescission, because they have alleged no agreements to be rescinded between them. As such, the rescission claim should be dismissed to the extent the Plaintiffs were targeting any non-contracting Defendants.

The Plaintiffs' third claim for relief seeking a declaratory judgment that the Plaintiffs are the rightful owners of Paysource common stock presumably implicates only the party to the Purchase Agreement for the stock – SPH. (Id. at ¶66). This claim should be dismissed against all of the

9

Defendants other than SPH, because that is the only Defendant alleged to have been a party to the Paysource Stock Purchase Agreement. (Id. at ¶¶27, 37).

The Plaintiffs' conversion claim, their fifth claim for relief, should be dismissed as to all Moving Defendants. Conversion, "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. The only factual allegations to which the Plaintiffs' conversion claim pertains appears to be those contained in Paragraph 43 of the Complaint. The issues with the claim and how it relates to Paragraph 43 are at least four. First, it is clear that although the Plaintiffs' Complaint once again asserts the claim against all "Defendants" it does not in fact pertain to all Defendants but, rather, SPH and/or Sadrianna at most. Second, the claim, when read in conjunction with Paragraph 43, truly excludes Sadrianna who simply engaged in a ministerial act of, "ordering a transfer." Third, there is no allegation concerning who it is that is exercising control over the $125,000 to which Paragraph 43 refers. Fourth, the allegation appears inconsistent with the chronology set out in the Plaintiffs' Complaint which speaks to the alleged $125,000 being "transferred" in late February 2007, prior to Sacco exercising his rights under the Security Agreement to claim all right, title and interest in Paysource. Read it total, the allegations amount to stating that the then owner of Paysource (SPH) took money out of Paysource. The wrongfulness in a tort sense is not apparent, even when reading the Plaintiffs' Complaint in a light most favorable to them. The Plaintiffs' conversion claim should be dismissed.

  C. <u>The Plaintiffs' Fourth, Sixth and Seventh Fraud-Related Claims Should Be Dismissed For Failure To Comply With The Particularity Requirement Of Federal Rule Of Civil Procedure 9(b) And Otherwise Failing To State A Claim Upon Which Relief May Be Granted.</u>

Fed. R. Civ. P. 9(b) requires that fraud "shall be stated with particularity." <u>Hoover v. Langston Equip. Assoc.</u>, 958 F.2d 742, 745-46 (6th Cir. 1992). The Plaintiffs cannot circumvent the requirements of Rule 9(b) by pleading conclusory allegations of a conspiracy or scheme to defraud. <u>Beck v. Cantor, Fitzgerald & Co.</u>, 621 F. Supp. 1547, 1552 (N.D.Ill. 1985) (citing <u>Decker v. Massey-Ferguson</u>, 681 F.2d 111, 119 (2d Cir. 1982), and <u>Adair v. Hunt Int'l Resources Corp.</u>, 526 F. Supp. 736, 744-45 (N.D.Ill. 1981)). <u>See also</u> <u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 361 (6th Cir. 2001) ("Plaintiffs may not simply rely on the proposition that Defendants must have known or should have known of, and participated in, the fraud. Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)"). This heightened pleading standard applies to all three of the Plaintiffs' fraud-related claims Four, Six and Seven.[2]

Accordingly, in order for these claims to meet the challenge, the Plaintiffs must, " allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." <u>United States ex rel. Bledsoe v. Cmty. Health Sys.</u>, 342 F.3d 634, 643 (6$_{th}$ Cir. 2003) (citation omitted). This specificity is required because the Moving Defendants are entitled to have fair notice of the Plaintiffs' claims so that they can " prepare an informed pleading responsive to the specific

---

[2] Accord: <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7$_{th}$ Cir. 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements." ); <u>In re Nat'l Century Fin. Enters., Inc.</u>, Case No. 2:03-md-1565, 2007 U.S. Dist LEXIS 33394 at *103, 122 (S.D. Ohio May 7, 2007) ("Rule 9(b) applies if a claim for negligent misrepresentation simply' realleges and incorporates by reference all prior allegations, including those alleging fraud.' " For a conspiracy to commit fraud claim, " it is clear that Rule 9(b) requires that the averments of the underlying fraud be pleaded with particularity.")(attached as **Exhibit G**).

11

allegations of fraud." Id. Furthermore, "A complaint 'may not rely upon blanket references to acts or omissions by all of the " defendants," for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" Bledsoe, 342 F.3d at 643. Accord: Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) ("We have previously rejected complaints that have 'lumped together' multiple defendants." ); Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1107, 1114 (W.D. Mich. 1996).

The Complaint in this case certainly fails to allege any basis for imposing liability on the part of Defendants Bates, Amar, and Flynn in connection with the Plaintiffs' fraud-related claims. As to Defendant Stollenwerk, the Complaint fails to allege with particularity sufficient facts to demonstrate any alleged scienter or fraudulent intent on Stollenwerk's part. The Complaint merely alleges that Stollenwerk, in his capacity as agent for SPH, informed Sacco that wire transfers were forthcoming. (Compl. at ¶¶32, 34, 38). The Complaint also alleges that when Sacco contacted Stollenwerk to inquire as to the status of the first wire transfer, "Stollenwerk promised to find out why payment had not been made." (Id. at ¶32). Eventually, after the payment provisions of the Purchase Agreement were amended (Id. at ¶37) a wire transfer was made. (Id. at ¶39). These allegations do not allege unlawful conduct, much less state with particularity a fraud claim against Stollenwerk.

Additional allegations pertaining to Stollenwerk at Paragraph 41 at most allege that he was a go-between who allegedly relayed communications back-and-forth between other named Defendants and the Plaintiffs. There are no allegations that Stollenwerk harbored any ill will or fraudulent intent during these alleged interactions. The Complaint does not state a claim of fraud against Stollenwerk, and the Plaintiffs' fraud claim should be dismissed as to him. See Fed. R. Civ.

12

P. 9(b); Beck, 621 F. Supp. 1547. Similarly, as to Sadrianna, he too is simply alleged to have been a go-between concerning SPH and Sacco at a point in time prior to the Purchase Agreement being amended. (Id. at ¶33). The allegations as to Stollenwerk and Sadrianna fail to state with particularity the facts necessary to support the Plaintiffs' fraud-related claims against them.

As to the corporate Moving Defendants, again the targets of the Plaintiffs' claims are unclear. Though there are certain references to certain thing happening on certain dates, the Complaint fails to demonstrate how those things fit together to relate specific misconduct of a specific Moving Defendant to a particular injury. In fact, with the exception of a few general and conclusory allegations of things such as "shemes" and "intricate webs," the Plaintiffs' Complaint is truly about contractual relationships going bad and contracting parties falling out. There has been no adequate pleading of the Plaintiffs' fraud-related claims against any of the Moving Defendants.

> D.     This Action Should Be Transferred To Florida Pursuant To 28 U.S.C. § 1404(a).

Especially if any of the Plaintiffs' claims remain against any of the Moving Defendants who did not contractually agree to resolve disputes here, this lawsuit should be transferred to the District Court for the Middle District of Florida. As set forth in 28 U.S.C. § 1404(a), "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the context of a motion to transfer pursuant to Section 1404(a), "the threshold consideration is whether the action 'might have been brought' in the transferee court." Jamhour v. Scottsdale Ins. Co., 211 F. Supp. 2d 941, 945 (S.D.Ohio 2002). An action, "might have been brought" in a transferee court if (a) the transferee court has jurisdiction over the subject matter of the action, (b) venue is proper there, and (c) the defendant is amenable to process issuing out of that court. Id. In this case, the District Court for the Middle District of Florida would have diversity

13

jurisdiction over this lawsuit, as this Court does, given that the Plaintiffs and Defendants are citizens of different states. See 28 U.S.C. § 1332(a)(1). Each of the Defendants – individual and corporate – would be subject to process in that District. Venue would be proper in Florida under the general venue statute, 28 U.S.C. § 1391(a)(2), if "a substantial part of the events or omissions giving rise to the claim arose" there. Id. (citing Michigan Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998)) (finding venue to be appropriate in Louisiana as part of the transfer analysis). Venue would be appropriate in Florida even if a substantial part of the events giving rise to the Plaintiffs' claims are found to have been in Ohio. See Jamhour, 211 F. Supp. 2d at 945. The fact that substantial activities allegedly took place in Ohio would not disqualify Florida as a proper venue as long as substantial activities took place in Florida too – even if the Plaintiffs hypothetically argue that the alleged activities in Ohio were more substantial. See id. As the Plaintiffs have alleged, all but one of the thirteen named Defendants is a Florida resident with the case centered on the affiliate relationship between Paysource and SPH in Orlando, Florida, and breaches of various contracts by the Florida corporations through the acts of their Orlando based employees. There does not appear to be a legitimate dispute that Orlando, Florida, could have been a proper venue for this action.

"Once it is determined that a case could have been brought in the transferee court, the issue becomes whether transfer is justified under the balance of the language of Section 1404(a) which analyzes whether transfer is justified for 'the convenience of parties and witnesses' and 'in the interest of justice.'" Id. "The factors to be considered under Section 1404(a) are similar to those weighed by courts in determining forum non conveniens motions; however, transfers pursuant to Section 1404(a) may be granted 'upon a lesser showing of inconvenience.'" Id. (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

14

> Courts are to consider both the private interests of the litigants and the public's interest in the administration of justice. The litigants' interests include:
>
> > The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.
>
> Public interests include:
>
> > Docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with the controlling law.
>
> This Court has also considered additional factors when evaluating whether transfer is appropriate under Section 1404(a). These additional factors include 'the nature of the suit; the place of the events involved; . . . and the residences of the parties.

Jamhour, 211 F. Supp. 2d at 945-46 (internal citations omitted) (citing Sky Technology Partners v. Midwest Research Institute, 125 F. Supp. 2d 286, 291 (S.D.Ohio 2000); Midwest Motor Supply Co., Inc. v. Kimball, 761 F. Supp. 1316, 1318 (S.D.Ohio 1991); Shapiro v. Merrill Lynch & Co., 634 F. Supp. 587, 589 (S.D.Ohio 1986)). Courts in the Sixth Circuit do not assign a plaintiff's choice of forum paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors. DeMoss v. First Artists Production Co., Ltd., 571 F. Supp. 409, 413 (N.D.Ohio 1983). The decision of whether to grant a change of venue ultimately lies within this Court's discretion. See Jamhour, 211 F. Supp. 2d at 946 (citing Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213, 215 (S.D.Ohio 1989)).

The Plaintiffs' response to this argument will certainly be, "We have a contract!" To the extent the Plaintiffs would argue that the forum selection clauses in the contracts at issue end the

15

analysis, the response is two-fold. First, it has long been held that private agreements do not control the § 1404(a) public interest factors. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757-58 (3rd Cir. 1973) (holding that the private agreement of the parties does not control the analysis); Upjohn Co. v. Gen. Accident Ins. Co. of America, 581 F. Supp. 432, 436 (D.D.C. 1984) (stating that a "service of suit clause does not foreclose transfer under the 'interest of justice' criteria of Section 1404(a) which involves 'public interests that must be weighed by the district court'") (Quoting Plum Tree, 488 F.2d at 757-78). The Sixth Circuit has confirmed this view, holding that the parties to an action cannot take away a federal court's discretion and control of its own docket, a power expressly intended by Congress in enacting § 1404(a).See Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537-38 (6th Cir. 2002)("such a clause 'should receive neither dispositive consideration . . .nor no consideration . . .but rather the consideration for which Congress provided in § 1404(a)'").

Second, the issue becomes a largely one-sided question if one is to assume that all of the non-contracting Defendants are to remain involved with this dispute in one form or another. As the Plaintiffs alleged in their Complaint, every single Defendant, with the exception of Avant Services, Inc., is a resident of Florida. Furthermore, whether or not all of the Defendants remain parties in this case, it is fair to presume that some if not all will be witnesses. Third, Paysource and Sacco themselves have a significant presence in Orlando, Florida, having incorporated a number of subsidiaries in Florida and opened an office in Orlando. **Exhibit H**.[3] In the end, the only things that pull this matter towards Ohio are the forum selection clauses contained in some of the contracts at issue. That pull is not enough to drag all of the other people and companies to Ohio as well.

---

[3]Attached as **Exhibit H** is counsel's Affidavit pertaining to certain documents found on-line. The Moving Defendants would ask the Court to take judicial notice of those documents.

16

**III.    Conclusion**

This lawsuit is about a deal that went bad. That deal was memorialized in a set of documents that included, among other things, clauses stating that if disputes arose between the contracting parties, they would be resolved in Ohio. Only three Defendants signed those contracts, but in a generally stated and ambiguous Complaint, the Plaintiffs have now attempted to escalate the dispute and go on an offensive by asserting fraud and other tort claims with no real factual basis and joining as Defendants Florida residents who never agreed to resolve any claims against them in Ohio. Other than the Defendants who entered into the contracts at issue, this Court lacks jurisdiction. To the extent, however, that other of the Moving Defendants remain entangled in some form in the dispute between the contracting parties, the matter should be resolved in a Florida Court, where the vast majority of the Defendants reside and where the Plaintiffs maintain a significant presence.

Respectfully submitted,

/s/ *Joseph C. Oehlers*
David C. Greer, Trial Attorney (0009090)
E-mail: dcg@bgllaw.com
Joseph C. Oehlers (#0065740)
E-mail: jco@bgllaw.com
Steven K. Dankof, Jr. (0080628)
E-mail: skd@bgllaw.com
BIESER, GREER & LANDIS LLP
400 National City Center
6 N. Main Street
Dayton, OH  45402
(937) 223-3277
(937) 223-6339 (fax)

Attorneys For Defendants, Mirabilis Ventures, Inc., Mirabilis HR, SPH, Inc., Common Paymaster Corp., AEM, Inc., Aaron Bates, Yaniv Amar, Marty Flynn, James Sadrianna and Jay Stollenwerk

## CERTIFICATE OF SERVICE

This is to certify that on the **23rd** day of **July 2007**, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing document was electronically mailed such filing to the attorneys of record or parties from whom counsel has not appeared:

*Attorneys for Plaintiffs*: Brian Scott Sullivan, Esq., Seth A. Schwartz, Esq. and Timothy S. Mangan, Esq.

*Attorney for Defendant Michael Stanley:* Scott K. Jones, Esq.

BIESER, GREER & LANDIS LLP

/s/ *Joseph C. Oehlers*
Joseph C. Oehlers

And that on the **23rd** day of **July, 2007**, a true and correct copy of the foregoing was sent, via regular U.S. Mail, postage prepaid, to the following unrepresented Defendants listed in the Plaintiffs' Complaint:

Frank Amodeo
614 Lake Avenue
Orlando, FL 32801

Avant Services, Inc.
156 Shinnecock Hill
Avondale, PA 19311

BIESER, GREER & LANDIS LLP

/s/ *Joseph C. Oehlers*
Joseph C. Oehlers

1737.207326 \ 314189.1