UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (AT DAYTON)

PAYSOURCE, INC.,                           :
                                           :
and                                        :        Civil Action No. 3:07cv0129
                                           :
ROBERT R. SACCO,                           :        Judge Walter Herbert Rice
                                           :
           Plaintiffs,                     :
                                           :
      vs.                                  :        **FIRST AMENDED COMPLAINT**
                                           :
MIRABILIS VENTURES, INC.,                  :
                                           :
      and                                  :
                                           :
MIRABILIS HR,                              :
                                           :
      and                                  :
                                           :
SPH, INC.,                                 :
                                           :
      and                                  :
                                           :
COMMON PAY MASTERS, INC.,                  :
                                           :
      and                                  :
                                           :
AEM, INC.,                                 :
                                           :
      and                                  :
                                           :
AVANT SERVICES, INC.,                      :
                                           :
      and                                  :
                                           :
JOHN DOES,                                 :
                                           :
           Defendants.                     :

Now come Plaintiffs and for their Amended Complaint against Defendants state as follows:

## THE PARTIES

1.      Paysource, Inc. ("Paysource") is an Ohio corporation and its principal place of business is 6500 Poe Avenue, 4th Floor, Dayton, Ohio 45414. Until at least April 4, 2007, Paysource was a professional employer organization specializing in providing cost-effective solutions for employers in the areas of payroll, taxes, benefits, government compliance, and numerous other human resources.

2.      At all times relevant to this action, Robert R. Sacco ("Sacco") is an individual who resided at Huber Heights, OH 45424. Until December 12, 2006, Sacco was the sole shareholder of Paysource. Paysource and Sacco will be collectively referred to herein as "Plaintiffs."

3.      Defendant Mirabilis Ventures, Inc. ("Mirabilis") is a Nevada corporation with its principal place of business at 111 North Orange Avenue, Orlando, Florida 32801.

4.      Upon information and belief, Defendant Mirabilis HR ("Mirabilis HR") is a Nevada corporation with its principal place of business at 111 North Orange Avenue, Orlando, Florida 32801.

5.      Defendant SPH, Inc. ("SPH") is a Nevada corporation with its principal place of business at 111 North Orange Avenue, Orlando, Florida 32801.

6.      Defendant Avant Services, Inc. ("Avant") is a Pennsylvania corporation with its principal place of business located at 156 Shinnecock Hill, Avondale, Pennsylvania 19311.

7.      Upon information and belief, Defendant AEM, Inc. ("AEM") is a Nevada corporation with its principal place of business located at 200 South Orange Avenue, Orlando, Florida 32801.

8.      Upon information and belief, Defendant Common Pay Masters, Inc. ("Common Pay Master") is Nevada corporation with its principal place of business located at 200 North Orange, Suite 1400, Orlando, Florida  32801.

9.      Defendant John Does ("Does") are unknown individuals or corporations who participated in Defendants' scheme to cause Plaintiffs harm.

## JURISDICTION AND VENUE

10.     Jurisdiction is based on 28 U.S.C. § 1332, the Ohio Long Arm statute, and the forum selection clauses between the parties.  Complete diversity of citizenship exists between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.     Venue is proper in the Southern District of Ohio, Western Division as this district is where Plaintiffs' cause of action arose.

## FACTUAL BACKGROUND

12.     Defendants Mirabilis Ventures, Mirabilis HR, SPH, Avant Services, Common Pay Masters, AEM, and Does (the "Defendants") are a series of companies and businesses complicit in a scheme whereby they acted interchangeably to defraud businesses and individuals, including Plaintiffs.  The Defendants were all controlled by Frank Amodeo, the mastermind behind the scheme.

### The Agreement to Purchase Paysource

13.     Sometime in the summer of 2006, Jeffrey Boone, Vice-President of Mirabilis Ventures, Inc., as authorized agent and on behalf of Defendant Mirabilis Ventures, Inc., contacted Plaintiff Sacco for the alleged purpose of offering to enter into a purchase agreement between Defendant AEM, d/b/a Mirabilis HR, and Sacco for the outstanding common stock of Paysource.

14.     Boone, along with James Sadrianna, on behalf of AEM and Mirabilis HR, represented telephonically in the fall of 2006 to Sacco that these companies were legitimately interested in

completing a purchase of Paysource and its related companies, Keystaff, Inc. ("Keystaff") and American Courier Express, Inc. ("American Courier").

15.     AEM, Mirabilis HR, and Mirabilis HR's parent company Mirabilis Ventures, had no intention of performing the proposed purchase agreement even when the transaction was proposed. Of course, none of that was disclosed to Sacco. Indeed, to the contrary, the Defendants reported to Sacco they had every intention to purchase the shares of Paysource, Keystaff and American Courier.

16.     Subsequent to the telephonic offer and representation, in the Fall of 2006 Sacco had multiple conversations and negotiations concerning the proposed transaction. These negotiations were conducted with Michael Stanley, James Sadrianna, Frank Amodeo, and Jay Stollenwerk. In particular, Defendant Mirabilis Ventures, on behalf of itself and/or its subsidiaries and through the aforementioned agents, represented to Plaintiff Sacco that it was acquiring professional employer organizations and that it would consolidate them under the Paysource name. Defendant Mirabilis Ventures, on behalf of itself and/or its subsidiaries and through the aforementioned agents, also told Plaintiff Sacco that Paysource would inherit thousands of employees from Defendant Common Pay Master which would require Paysource to hire more personnel and invest tens of thousands of dollars.

17.     On or about October 30, 2006, these representations and negotiations culminated in a Letter of Intent (the "Letter of Intent") between AEM, d/b/a Mirabilis HR, and Sacco for the purchase of the common stock of Paysource, Keystaff, and American Courier.

18.     From October 30, 2006, until December 11, 2006, Plaintiffs provided all information requested of them for Defendants' due diligence.

19.     As inducement to enter into the sale of Paysource, Defendants Mirabilis Ventures, Inc. offered Sacco and Paysource's management personnel shares of stock of Defendant Mirabilis

Ventures, Inc. Frank Amodeo, a controlling person in Mirabilis Ventures, Inc. made this specific representation to Sacco, to which James Sadrianna acquiesced.

20.     During the due diligence period, the following additional representations were made by Mirabilis Ventures and/or its subsidiaries by the aforementioned agents: Paysource would inherit the clients of Common Pay Masters, and at least four other PEOs were or would be acquired by Defendants and sold to Paysource for valuable consideration.

21.     Defendants formed Defendant SPH to be the acquiring entity of Paysource. SPH has never functioned as a corporation, was inadequately capitalized, and was used by the Defendants as a pass-through entity to acquire Paysource, Keystaff, and American Courier Service.

22.     The above discussions and representations culminated in an agreement executed on December 12, 2006, by and between Sacco and SPH for the common stock of Paysource (the "Purchase Agreement"). The total purchase price for Paysource exceeded $22 million dollars. Thirty-three and one-third percent (33 1/3%) of the purchase price was payable no later than January 1, 2007. Similar agreements were entered into for the sale of the common stock of Keystaff and American Courier Service.

## Common Pay Master's Liabilities Transferred to Paysource

23.     As an inducement to enter into the transaction and Purchase Agreement, Defendants represented that one of its companies, Common Pay Master, had a number of clients that could be serviced by Paysource. Common Pay Master provided the services of a professional employee organization and processed the payroll, among other services, for its clients.

24.     From December through January, 2007, Paysource invested substantial time and expense in transferring the clients from Common Pay Master to Paysource. Paysource sent

personnel to Florida to meet with Defendants' agents, arranged for electronic transfer of data, hired more personnel, and signed contracts with Common Pay Master clients.

25.    As it turned out, almost all of those clients of Common Pay Master were worthless in that Common Pay Master knew those clients had defaulted and would continue to default on their respective obligations to pay for services rendered.  The purpose of this effort was to saddle Paysource with hundreds of thousands of dollars of obligations belonging to Common Pay Master. Most of Paysource's effort to transfer this clients from Common Pay Master was in vain as the Defendants knew this was an effort to saddle Paysource with obligations to Common Pay Master clients and not provide Paysource with anything in return.

26.    This purported transfer of clients adversely affected the value of Sacco's shares in Paysource.

27.    On December 22, 2006, after the signing of the Purchase Agreement, Defendant Mirabilis Ventures attempted to require that Paysource pay Defendant Mirabilis Ventures a one-percent (1%) commission to any employees Mirabilis Ventures turned over to Common Pay Master and ultimately Paysource.  Sacco refused to sign such an agreement.

28.    Shortly after the signing of the Purchase Agreement, Frank Amodeo, on behalf of Mirabilis Ventures, Inc., ordered that the accounting functions of Paysource be transferred to and incorporated in the accounting functions of Mirabilis Ventures.  Daily accounting functions were no longer performed at Paysource's offices in Dayton, Ohio.  Sacco was against the idea and told Amodeo so.

### The Purported Transfer of Other PEOs to Paysource

29.    Shortly after the purchase of Paysource, the Defendants required that Paysource purchase from Defendants various other professional employee organizations located in Alabama,

Georgia, Nebraska and Pennsylvania ("PEOs").  Defendants entered into agreements to purchase those various PEOs in the months prior to December 2006.

30.     Some of the Defendants prepared sale documents allegedly transferring their interest in those professional employee organizations to Paysource.  In return, Defendant Mirabilis Ventures executed promissory notes with Paysource allegedly obligating Paysource to pay millions of dollars to Mirabilis Ventures for the acquisitions of the PEOs.  In return, Defendant AEM agreed that those PEOs would operate under the Paysource name and in exchange for that, would pay the license fee to Paysource of $1,054,349.40 per month.

31.     Pursuant to a series of agreements, Paysource entered into a number of transactions for the purchases of the PEOs.  Specifically, the transactions are as follows (collectively, the "PEO Transactions"):

      a.     On December 29, 2006, Paysource purchased 100% of the common stock of Alliance Compensation and Benefits Group, Inc. ("Alliance") from Defendant Mirabilis Ventures, Inc.

      b.     On December 29, 2006, Paysource purchased 100% of the shares of common stock of All Staff Personnel Management, Inc. ("All Staff") from Defendant Mirabilis Ventures, Inc.

      c.     On December 31, 2006, Paysource entered into an Assignment of Contract with Defendant Mirabilis Ventures for the contract by and between Mirabilis Ventures and Defendant Avant for the purchase of the stock of BCA Employee Management Group, Inc. and BCA Professional Services, Inc. (collectively "BCA")

      d.     On December 29, 2006, Paysource purchased the assets of the Hancock Group, LLC ("Hancock") from the Hancock.

32.     Defendant Mirabilis Ventures could not legally sell the stock of Alliance to Paysource as the transaction itself was a violation of the transaction whereby Mirabilis Ventures acquired ownership of the stock of Alliance.

33.     Defendant Mirabilis Ventures could not legally sell the stock of All Staff to Paysource as the transaction itself was a violation of the transaction whereby Mirabilis Ventures acquired ownership of the stock of All Staff.

34.     Defendant Mirabilis Ventures was not authorized to assign its BCA contract to Paysource because Avant was not authorized to sell BCA to Mirabilis Ventures.  In fact, BCA instituted an action in the Court of Common Pleas for Chester County against Avant Services and Mirabilis Ventures, among others.

35.     Hancock was not authorized to sell its assets to Paysource.  The former owners of the Hancock Group, LLC have instituted an action against Defendants Mirabilis Ventures and Amodeo in the United States District Court for the Northern District of Alabama, Middle Division, for breach of the agreements between the Hancock and Mirabilis Ventures, including for the transfer of assets to Paysource.  Moreover, the value of Sacco's interests in Paysource was damaged by these purported, but illegal, transactions.

36.     The PEOs transferred to Paysource (the "PEO Transactions") are worthless or nearly so.  Paysource has been damaged by these purported illegal transfers by having to incur liabilities of these PEOs and through legal and other expenses incurred in disentangling Paysource from these PEOs.

## Defendants' Failure to Perform The Purchase Agreement

37.     On Friday, December 29, 2006, the last business day before the January 1, 2007 deadline for the first payment, Defendant SPH, through its agent Jay Stollenwerk, informed Sacco that Frank Amodeo had arranged for and set up the wire transfer so that Sacco would receive the first payment for the purchase of Paysource on a timely basis.  Sacco informed Stollenwerk on the afternoon of December 29, 2006 that no payment had yet been made. SPH, through Stollenwerk, then promised to find out why the payment had not been made.

38.     January 1, 2007, the date the first payment was due to Sacco, came and went with no payment.  On January 5, 2007, James Sadrianna, on behalf of SPH,  represented and promised Sacco that funds would be placed in an escrow account that day or Monday, January 8, 2007, so that the first payment would be assured.

39.     SPH's representations were false and made intentionally to induce Sacco to continue the business relationship with Defendants.

40.     Also on that same date, additional representations were made by SPH agents Stollenwerk and Sadrianna to Plaintiff Sacco that funds would be sent to Sacco for payment.

41.     Again, no payment was received from any of the Defendants on either January 5 or January 8, 2007.

42.     Based on the representations and assurances of SPH, through Stollenwerk and Amodeo, Sacco traveled to Orlando, Florida on January 8, 2007 to meet with the Defendants' representatives for the purpose of entering into an amendment to the Purchase Agreement.

43.     On January 8, 2007, Sacco and Defendant SPH entered into an Amendment to the Purchase Agreement.  Among other things, the parties agreed to amend the Purchase Agreement such that $350,000.00 of the purchase price would be payable on January 8, 2007 in cash by wire transfer and that SPH would make monthly payments commencing February 8, 2007 through and including February 8, 2008.

44.     In addition, on January 8, 2007, Plaintiff Sacco and Defendant SPH entered into a Security Agreement to secure the prompt payment to Plaintiff Sacco.  The Security Agreement granted Plaintiff Sacco a security interest in Paysource.

45.     That same day, Stollenwerk, on behalf of SPH, again communicated with Sacco and informed him that Amodeo, Defendants' consultant, had authorized the wire transfer and it would be

made that day for the first payment.  SPH failed to pay Paysource any of the amounts due on January 8, 2007.

46.    Finally, on January 9, 2007, one wire transfer payment was made to Sacco of $600,000.  The amount was insufficient and in breach of the original Purchase Agreement and Amendment as SPH had not paid for the other two companies, Keystaff and American Courier Service, which payment was due for those companies on December 12, 2006.

47.    The next day, a second wire transfer from Defendants to Sacco was made of $400,000.  The two combined payments were applied and satisfied the debt for Keystaff and American Courier Service and the balance was applied to the debt owed to Sacco for Paysource.

48.    As of January 22, 2007, Defendants still had not provided Plaintiffs with Defendant Mirabilis Ventures' stock as part of the sale.  On that day, Defendant Mirabilis Ventures continued its campaign of fraud when, through its agent, James Sadrianna, Mirabilis Ventures informed Sacco that it was reorganizing and that the issue would be addressed in the future.

49.    On February 8, 2007, the payment to Sacco required by the Purchase Agreement and its Amendment was not made.  Stollenwerk informed Sacco that he spoke with Amodeo and that Amodeo was otherwise unavailable and unable to make the payment timely.  Stollenwerk further represented to Plaintiff Sacco that Amodeo would arrange for the second payment to be sent early the following week.

50.    The payment represented by Stollenwerk on behalf of SPH was not made.

51.    Again, Stollenwerk reached out to Sacco and on February 14, 2007 represented that Amodeo was going to make payment on behalf of SPH to Sacco that day or early the following morning.  Again, no payment was made.

10

52.     As of February 27, 2007, SPH had failed to pay Plaintiff Sacco and continued representing falsely that payment was forthcoming.

53.     On February 27, 2007, Defendant SPH again represented that Amodeo, Defendants' agent, arranged for new funds and that payment would be made.

54.     Meanwhile, at the same time, the Defendants manipulated the accounting functions of Paysource.  Defendants transferred funds into and out of Paysource as part of an effort to hide the source of the funds.  Some payments were provided on Paysource's behalf and other payments were made which in no way benefited or were on behalf of Paysource.  In addition, Defendant SPH, through its agent Sadrianna, arranged to transfer $225,000.00 from Paysource.  Presumably, Defendants wanted to take money from Paysource to pay Sacco as they were now several weeks behind on the obligation to make the payment.  Sacco attempted to reverse the transaction when Defendants refused to return the money to Paysource.  Sacco was able to return $100,000 to Paysource, but was not able to return $125,000.  As of this date, the $125,000 which was taken from Paysource has not been returned despite demand to have it returned.

55.     The loss of the $125,000 adversely affected the value of Sacco's interests in Paysource.

56.     As of March 5, Defendants failed to make the payments due February 8 and had not provided any assurance that the additional payment was forthcoming.  Indeed, the next payment due March 8 was not made.

### The License Agreement and Security Agreement

57.     On January 8, 2007, Defendant AEM entered into a License Agreement with Paysource whereby Defendant AEM agreed to pay $1,054,349.40 to Paysource per month for ten (10) years with the first payment commencing January 31, 2007.

58.     January 31, 2007 came and went and no payment was made as required by the License Agreement.  As of the date of this filing, no payments have been made at all under the License Agreement.

59.     On March 8, 2007, Paysource provided the required notice to Defendant AEM of Defendant AEM's default under the License Agreement which has not been cured timely.  AEM's default under the license agreement has adversely affected the value of Sacco's interests in Paysource.

60.     On March 5, 2007, pursuant to the Security Agreement dated January 8, 2007, Plaintiff Sacco exercised his rights under the Security Agreement to claim all right, title and interest in Paysource.  On April 4, 2007, Sacco incorporated PaysourceUSA, Inc. and since then transferred the assets of Paysource to PaysourceUSA, Inc.  When Sacco exercised his rights, the value of Paysource was diminished substantially through the Defendants' actions in that the accounting functions had been run through Defendant Mirabilis, Paysource had more debt than before the sale, worthless contracts had been assigned or sold to Paysource, Defendants' withdrew money from Paysource wrongfully, and the four PEO's Paysource had acquired were essentially worthless.  Since then, Sacco has incurred substantial sums of money to unwind the wrongdoings of the defendants, including defending himself and Paysource in lawsuits arising from Defendants' activities and in the loss of value of Sacco's interests in Paysource.

### First Cause of Action
**(Breaches of Contracts with Sacco)**
**(Defendants AEM; Mirabilis HR; SPH)**

61.     Plaintiffs incorporate the preceding paragraphs as if rewritten here.

62.    Sacco performed his duties under the Letter of Intent executed between Defendant AEM, d/b/a Mirabilis HR, and Sacco for the purchase of the common stock of Paysource, Keystaff, and American Courier Express.

63.    Defendant AEM, d/b/a Mirabilis HR, breached the terms of the Letter of Intent entered into between it and Sacco for the purchase of the common stock of Paysource, Keystaff, and American Courier and has failed to cure this default.

64.    Sacco has been damaged by AEM and Mirabilis HR's breaches of the Letter of Intent in an amount to be proven at trial which exceeds $75,000.

65.    Sacco performed his duties under the Purchase Agreement and Amendments thereto between Sacco and Defendant SPH.

66.    SPH has breached the terms of the Purchase Agreement by, among other things, failing to pay Sacco for the common stock of Paysource, Keystaff, and American Courier.  SPH failed to cure such default, which has damaged Sacco in an amount to be proven at trial which exceeds $75,000.

**Second Cause of Action**
**(Breach of Contract with Paysource)**
**(Defendant AEM)**

67.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

68.    Paysource has performed its duties under the License Agreement between AEM and Paysource.

69.    AEM breached its agreement to pay Paysource under the License Agreement and failed to cure such default.

70.    AEM owes Paysource damages in an amount to be proven at trial which exceeds $75,000.

### Third Cause of Action
**(Breaches of the Covenant of Good Faith and Fair Dealing with Sacco)**
**(Defendants AEM; Mirabilis HR; Common Pay Master, Avant, Mirabilis Ventures, SPH)**

71.  Plaintiffs incorporate the preceding paragraphs as if rewritten here.

72.  AEM, d/b/a Mirabilis HR, entered into the Letter of Intent between it and Sacco for the purchase of the common stock of Paysource, Keystaff, and American Courier.

73.  SPH entered into the Purchase Agreement and Amendments thereto with Sacco for the common stock of Paysource, Keystaff, and American Courier.

74.  Common Pay Master, and other Defendants including SPH, AEM, and Mirabilis Ventures represented the validity of Common Pay Master's clients when entering into the Purchase Agreement and the related agreements.

75.  Mirabilis Ventures, Avant, and other Defendants falsely represented the legitimacy of the PEO Transactions during Purchase Agreement negotiations.

76.  The Letter of Intent and the Purchase Agreement and Amendments thereto included implied covenants of good faith and fair dealing.

77.  Mirabilis Ventures orally contracted with Sacco to provide Sacco and Paysource's management with shares of Mirabilis Ventures in order to induce Sacco to enter into certain agreements which were entered into.  This oral contract included an implied covenant of good faith and fair dealing.

78.  AEM, Mirabilis HR, Mirabilis Ventures, Common Pay Master, and SPH have breached the implied covenants of fair dealing in each of these contracts by entering into these contracts without intent to ever perform these agreements, by entering into these agreements with fraudulent intent, and through the above-listed actions.

79.    Sacco has been damaged by AEM, Mirabilis HR, Mirabilis Ventures, Common Pay Master, and SPH's breaches of the covenants of good faith and fair dealing in the License Agreement, Purchase Agreement and Amendments thereto, PEO-related promissory notes, the oral contract, and the Letter of Intent in an amount to be proven at trial, but in amounts that exceed $75,000.

**Fourth Cause of Action**
**(Breached of the Covenant of Good Faith and Fair Dealing with Paysource)**
**(Defendants AEM; Common Pay Master, Mirabilis Ventures, SPH)**

80.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

81.    AEM entered into the License Agreement with Paysource.

82.    Mirabilis Ventures caused for the PEO Transactions to take place and entered into promissory notes with Paysource associated with these PEO Transactions.

83.    Common Pay Master, and other Defendants including SPH, AEM, and Mirabilis Ventures represented the validity of Common Pay Master's clients when entering into the Purchase Agreement and Amendments thereto.

84.    The Purchase Agreement and Amendments thereto, PEO-related promissory notes, and License Agreement all include implied covenants of good faith and fair dealing.

85.    AEM, Mirabilis HR, Mirabilis Ventures, Common Pay Master, and SPH have breached the implied covenants of fair dealing in each of these contracts by entering into these contracts without intent to ever perform these agreements, by entering into these agreements with fraudulent intent, and through the above-listed actions.

86.    Paysource has been damaged by AEM, Mirabilis HR, Mirabilis Ventures, Common Pay Master, and SPH's breaches of the covenants of good faith and fair dealing in the License Agreement, Purchase Agreement and Amendments thereto (as a third party beneficiary), and the

PEO-related promissory notes in an amount to be proven at trial, but in amounts that exceed $75,000.

### Fifth Cause of Action
### (Fraud in the Inducement with Sacco and Paysource)
### (SPH, AEM, Mirabilis Ventures, Mirabilis HR, Avant, Common Pay Master)

87.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

88.    Defendants systematically engaged in a campaign of fraud against both Plaintiffs including fraudulent inducement and fraudulent representations concerning the negotiation and sale of Paysource. Such conduct includes, but is not limited to, representing that Sacco would be paid for his Paysource stock, representing the Paysource Purchase transaction was legitimate, causing Paysource to enter into acquisitions of other PEO's when it was unlawful to do so, and inducing Paysource to enter into the License Agreement with no intention of ever paying Paysource.

89.    SPH made representations through its agents in the negotiations leading up to the execution of the Purchase Agreement (including Amendments) and represented that it intended to perform the Purchase Agreement (including Amendments). SPH made these representations intending to induce Sacco to enter into the Purchase Agreement (including Amendments) but SPH had no intention or performing the Purchase Agreement of the Amendments thereto.

90.    AEM, through its agents, made representations in the negotiations leading up to the execution of the Letter of Intent and represented it intended to perform the Letter of Intent. AEM made these representations intending to induce Sacco to enter into the Letter of Intent but AEM had no intention of performing the Letter of Intent.

91.    Mirabilis Ventures and Avant, through their agents, made representations to Sacco in the negotiations leading up to the Purchase Agreement about the legitimacy of the PEO Transactions

to induce Sacco to enter into the Purchase Agreement. Mirabilis Ventures and Avant knew these representations were false.

92.     AEM, though its agents, made representations during the negotiations of the License Agreement and represented that it intended to perform the License Agreement. AEM made these representations intending to induce Paysource to enter into the License Agreement but AEM had no intention of performing the License Agreement.

93.     Mirabilis HR, through its agents including SPH, made representations in the negotiations leading up to the execution of the Purchase Agreement and represented that it intended to perform the Purchase Agreement. Mirabilis HR made these representations intending to induce Sacco to enter into the Purchase Agreement but Mirabilis HR had no intention of performing the Purchase Agreement.

94.     Mirabilis Ventures represented the PEO Transactions and associated promissory notes were legitimate and intended that Paysource would rely on these representations. Mirabilis Ventures also represented that Sacco and Paysource's management would receive Mirabilis Venture's stock and intended that Sacco would rely on these representations.

95.     Avant also represented the legitimacy of the PEO Transactions and intended that Paysource would rely on these false and fraudulent representations. Mirabilis Ventures and Avant also made fraudulent representations to induce Paysource to enter into the illegal and worthless PEO Transactions and associated promissory notes.

96.     Common Pay Master, though its agents, represented it had a number of clients that could be serviced by Paysource. This representation was incorrect in that the clients were, at least in large part, worthless. Common Pay Master, on its own behalf and on behalf of the Corporate Defendants including SPH, AEM, Mirabilis HR, and Mirabilis Ventures, made these representations

intending to induce Sacco to enter into the Letter of Intent and Purchase Agreement (including Amendments).

97.    As intended, Sacco relied on SPH, AEM, Mirabilis HR, Avant, Common Pay Master, and Mirabilis Ventures' representations, was induced to enter into the above transactions, and was damaged in an amount to be proven at trial in excess of $75,000.

98.    As intended, Paysource relied on SPH, AEM, Avant, Common Pay Master, and Mirabilis Ventures' representations, was induced to enter into the above transactions, and was damaged in an amount to be proven at trial in excess of $75,000.

99.    Sacco requests that this Court rescind the Letter of Intent, the Purchase Agreement, and all transactions with Common Paymaster.

100.    Paysource requests that this Court rescind the License Agreement, the Common Paymaster transactions, and the PEO Transactions.

### Sixth Cause of Action
### (Sacco's Declaratory Judgment)
### (SPH)

101.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

102.    Sacco seek a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201.

103.    Sacco properly exercised his rights under the Security Agreement, dated January 8, 2007, to claim all assets of Paysource.

104.    All parties who have an interest have been joined in this action and this Court has the authority to declare that Plaintiff Sacco is the rightful owner of the assets of Paysource and that Defendants shall do all acts necessary to ensure Sacco's ownership of the common stock of Paysource free, clear, and without encumbrance.

105.    Alternatively, Sacco was fraudulently induced to enter into the Purchase Agreement (including Amendments) and the Letter of Intent through the above actions and representations. These and all resulting transactions should be rescinded and Sacco seeks a declaratory judgment that he is the rightful owner of the common stock of Paysource.  All parties who have an interest in Paysource have been joined in this action and this Court has the authority to declare that Plaintiff Sacco is the rightful owner of the common stock of Paysource and that Defendants shall do all acts necessary to ensure Sacco's ownership of the common stock of Paysource free, clear, and without encumbrance.

### Seventh Cause of Action
**(Fraud)**
**(Common Pay Master, Avant, AEM, SPH, Mirabilis HR, Mirabilis Ventures)**

106.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

107.    Defendants have systematically engaged in a campaign of fraud against Sacco and Paysource including fraudulent inducement and fraudulent representations concerning the negotiation and sale of Paysource.  Such fraudulent conduct includes, but is not limited to, representing that Sacco would be paid for his Paysource stock, representing the Letter of Intent and the Purchases Agreement were legitimate transactions, repeatedly promising that payment was forthcoming, causing Paysource to enter into acquisitions of other PEO's when it was unlawful to do so, transferring money from Paysource wrongfully to pay Sacco, entering into the license agreement with no intention of payment, and attempting to divert existing debt and obligations of the Defendants to Paysource.

108.    Defendants' scheme reduced the value of Paysource such that the value of Sacco's interest in Paysource was diminished, causing Sacco harm.

109.    Defendants SPH, AEM, Avant, Mirabilis HR, and Mirabilis Ventures made representations concerning the purported sale of Paysource, represented the legitimacy of the sale of Paysource, represented the legitimacy of the Common Paymaster and PEO Transactions, and repeatedly through their agents represented that payment would be made pursuant to the Purchase Agreement.  Defendants SPH, AEM, Avant, Mirabilis HR, and Mirabilis Ventures intended that both Sacco and Paysource would rely on these fraudulent representations.

110.    AEM represented the legitimacy of the License Agreement that payment would be made pursuant to the License Agreement, and intended that Paysource would rely on these representations.

111.    Mirabilis Ventures made representations leading up to the Purchase Agreement, the PEO Transactions, and the associated promissory notes including, but not limited to, representing Sacco and Paysource management would receive Mirabilis Ventures stock and representing the legitimacy of the PEO Transactions and the associated promissory notes.  Mirabilis Ventures intended that Sacco and Paysource would rely on these fraudulent representations.  Avant also represented the legitimacy of the PEO transactions and intended that Paysource would rely on these false and fraudulent representations.

112.    Common Paymaster represented the legitimacy of the Purchase Agreement and that Paysource would benefit from transference of Common Pay Master's clients.  Common Pay Master intended that Plaintiffs would rely on these false or fraudulent representations.

113.    Paysource relied on SPH, AEM, Avant, Mirabilis HR, Common Pay Master, and Mirabilis Ventures' representations and was damaged in an amount to be proven at trial, but in amounts that exceed $75,000.

114.    Sacco relied on SPH, AEM, Avant, Mirabilis HR, Common Pay Master, and Mirabilis Ventures' representations and was damaged in an amount to be proven at trial, but in amounts that exceed $75,000.

115.    Sacco further requests that this Court rescind the Letter of Intent, the Purchase Agreement, and all transactions with Common Paymaster.

116.    Paysource requests that this Court rescind the License Agreement, the Common Paymaster transactions, and the PEO Transactions.

**Eighth Cause of Action**
**(Fraud for PEOs on Paysource)**
**(Avant, Mirabilis Ventures)**

117.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

118.    After Defendants' purported purchase of Paysource, Mirabilis Ventures and Avant required that Paysource enter into the PEO Transactions.

119.    In return for these purportedly valuable and legitimate transactions, Paysource was required to execute promissory notes with Mirabilis Ventures.

120.    Mirabilis Ventures and Avant represented to Paysource that the PEO Transactions were valuable and legitimate transactions. Mirabilis Ventures and Avant intended for Paysource to rely on these representations. The representations induced Paysource to participate in these transactions.

121.    In fact, the PEO Transactions were not valuable and were part of Defendants' scheme to unload debt accumulated by Defendants' fraudulent scheme including, but not limited to, debt owed to the government for unpaid payroll taxes.

122.    In addition, Mirabilis Ventures was legally prohibited from selling the stock of Alliance and All Staff to Paysource. Mirabilis Ventures was also legally prohibited from assigning

the BCA contract to Paysource because Avant was prohibited from selling BCA to Paysource. Mirabilis Ventures was also legally prohibited from assigning the Hancock contract to Paysource.

123.    Defendants' scheme caused harm to Paysource and reduced value of Sacco's interest in Paysource.

124.    Paysource and Sacco relied on Mirabilis Ventures and Avants' representations that the transactions were legitimate and the PEOs had value.   The fraudulent PEO Transactions and associated promissory notes damaged Plaintiffs in an amount to be proven at trial, but in amounts that exceed $75,000.

125.    Sacco further requests that this Court rescind the Letter of Intent, the Purchase Agreement, and all transactions with Common Paymaster.

126.    Paysource requests that this Court rescind the License Agreement, the Common Paymaster transactions, and the PEO Transactions.

## Ninth Cause of Action
### (Negligent Misrepresentation)
### (SPH, AEM, Mirabilis Ventures, Mirabilis HR, Common Pay Master)

127.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

128.    Defendants have systematically engaged in a campaign of misrepresentation against Plaintiffs including misrepresentation concerning the negotiation and sale of Paysource.   Such fraudulent conduct includes, but is not limited to, representing that Sacco would be paid for his Paysource stock, representing that the Letter of Intent and the Purchase Agreement were legitimate, repeatedly promising that payment was forthcoming, causing Paysource to enter into acquisitions of other PEO's when it was unlawful to do so, transferring money from Paysource, entering into the license agreement with no intention of payment, and attempting to divert existing debt and obligations of the defendants to Paysource.

129.    Through false oral and written representations and/or misrepresentations Defendant's had reason to know were false, SPH, AEM, Mirabilis Ventures, Common Pay Master, and Mirabilis HR directly or indirectly induced Plaintiff Sacco and Plaintiff Paysource to enter into the above transactions in what Defendants should have known was a fraudulent scheme.

130.    Defendants negligently and continually represented the legitimacy of Defendants' operations, the intent of the parties to enter into and perform the above agreements, and the worth of Common Pay Master's clients.

131.    Defendants' scheme harmed Paysource and harmed the value of Sacco's interest in Paysource.

132.    Both Plaintiffs relied on Defendants' representations and have been damaged by Defendants in amounts to be proven at trial, but in amounts that exceed $75,000.

**Tenth Cause of Action**
**(Civil Conspiracy)**
**(SPH, AEM, Mirabilis Ventures, Avant, Mirabilis HR, Common Pay Master)**

133.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

134.    The Defendants acted in combination with one another with willful and malicious intent to defraud Plaintiffs and continue to conspire and deceive Plaintiffs concerning:

    A.    The Letter of Intent;

    B.    The License Agreement;

    C.    The Purchase Agreement;

    D.    The PEO Transactions;

    E.    The transfer of Common Pay Master's clients;

    F.    The alleged grant of Mirabilis Ventures stock;

    G.    The unauthorized withdrawal of Paysource's funds; and

    H.    The operation of Paysource.

135.    As a direct consequence of Defendants' actions, Plaintiffs have been defrauded, have sustained significant losses and damages, and continue to sustain significant losses and damages. Plaintiffs are also entitled to punitive damages and attorneys fees from Defendants.

**Eleventh Cause of Action**
**(Conversion with Paysource)**
**(SPH)**

136.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

137.    SPH has unlawfully converted Paysources' property by transferring money away from Paysource to SPH and/or other Defendants, which has damaged Paysource.

**Twelfth Cause of Action**
**(Rescission with Paysource and Sacco)**
**(Hancock Group; Mirabilis Ventures; Avant)**

138.    Plaintiffs incorporate the preceding paragraphs as if rewritten here.

139.    Because the PEO Transactions were illegal and fraudulent, and because Hancock, Mirabilis Ventures, and Avant were not authorized to enter into these transactions, rescission of the agreements between, on the one hand, Hancock, Mirabilis Ventures, and Avant, and, on the other hand, Paysource, is proper.

140.    Sacco further requests that this Court rescind the Letter of Intent, the Purchase Agreement, and all transactions with Common Paymaster.

141.    Paysource requests that this Court rescind the License Agreement, the Common Paymaster transactions, and the PEO Transactions.

WHEREFORE, Plaintiffs pray for the following relief:

A.    Damages jointly and severally from Defendants;

B.    An order declaring that Sacco is the rightful owner of the assets of Paysource, Keystaff, Inc., and American Courier Express, Inc. free, clear, and without encumbrance.

C.      An order declaring that Sacco is the rightful owner of the common stock of Paysource, Keystaff, Inc., and American Courier Express, Inc. free, clear, and without encumbrance.

D.      An order rescinding the Letter of Intent; the Purchase Agreement; and the Common Paymaster transactions between Sacco and Defendants;

E.      An order rescinding the Common Paymaster transactions; the License Agreement; and the sale of the various professional employee organizations between Paysource and Defendants;

F.      Punitive damages;

G.      The costs and fees Plaintiffs incurred in this action; and

H.      Such other relief as the Court deems Plaintiffs are entitled.

Respectfully submitted,

/s/ Seth A. Schwartz
Brian S. Sullivan (0040219)
E-mail:  brian.sullivan@dinslaw.com
Seth A. Schwartz (0080961)
E-mail:  seth.schwartz@dinslaw.com
DINSMORE & SHOHL
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202-4797
Phone:  (513) 977-8200
Facsimile:  (513) 977-8141

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May, 2008, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and U.S. mail, postage prepaid, as required.  Parties may access this filing through the Court's system.

David C. Greer
Joseph C. Oehlers
Steven K. Danhof, Jr.
Bieser, Greer & Landis LLP
400 National City Center
6 North Main Street
Dayton, OH 45403
*Attorneys for Represented Defendants*
*Served via electronic filing*

Avant Services, Inc.
156 Shinnecock Hill
Avondale, PA 19311

*Served via electronic filing*

/s/ Seth A. Schwartz_____